UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICROMESH TECHNOLOGY CORPORATION<br><br>   Plaintiff/<br>   Counterclaim-Defendant<br><br>   vs.<br><br>AMERICAN RECREATION PRODUCTS, INC., d/b/a Kelty<br><br>   Defendant/<br>   Counterclaim-Plaintiff | No. C-06-6030 MHP<br><br>**MEMORANDUM & ORDER**<br>**Re: Defendant's Motion for Attorneys' Fees** |

  Plaintiff/counterclaim-defendant Micromesh Technology Corporation ("MTC" or "plaintiff") brought a patent infringement action against defendant/counterclaim-plaintiff American Recreation Products ("ARP"), which was subsequently dismissed voluntarily. ARP now moves for an award of costs and attorneys' fees pursuant to 35 U.S.C. section 285.

BACKGROUND

  Defendant ARP is a Delaware corporation that uses "spacer mesh" fabrics on several models of its backpacks. Ballard Dec. ¶ 2. Acacia Technology Group ("Acacia") is a patent licensing company. Eidson Dec., Exh 30. Acacia formed plaintiff, MTC, as its subsidiary and assigned it US

1

Patent No. 5,935,878 ('878 Patent) roughly two days before commencing this action.[1] Eidson Dec., Exh. 5. The '878 patent at issue covers "micromesh" laminate. The micromesh laminate disclosed in the patent has a first layer with a surface provided with a plurality of knit holes having a combined area which is substantially less than one-half of the layer's surface area. The micromesh has a second layer directly bonded to said micromesh layer over substantially the entire surface area. Eidson Dec., Exh. 22.

On January 30, 2006, Acacia sent ARP a notice letter which claimed ARP's spacer mesh infringed the '878 patent. Eidson Dec., Exh. 7. Acacia's notice letter was accompanied by a representative claim chart that included several references to jackets, two photographs of allegedly infringing backpacks, and a CD-ROM of prior art references. Id. The notice letter included a demand for a $500,000 licensing fee to avoid possible litigation. Id. The parties corresponded, via voicemail and e-mail, to clarify what specific products were at issue. Ybaben Dec. ¶ 5. ARP's backpacks were the allegedly infringing product at issue.

The parties continued correspondence for about nine months. The correspondence mainly involved Acacia re-sending the representative claim chart to relevant parties and failed attempts to settle the dispute. On September 28, 2006, Acacia (through its newly formed subsidiary MTC) filed this action against ARP asserting infringement of the '878 Patent. Eidson Dec., Exh. 8. On October 5, 2006 the parties discussed the possibility of ARP taking a license, but the negotiations failed. Ybaben Dec ¶ 18. The parties continued to correspond but were not able to negotiate a license agreement.

On December 6, 2006 ARP answered the complaint and counterclaimed for invalidity and noninfringement. On December 8, 2006 MTC notified ARP that the minimum licensing fee would be increased to $1,500,000 after December 31, 2006. Eidson Dec., Exh. 9. On January 22 2006, prior to the Initial Case Management Conference in this action, ARP presented MTC with its research into the validity of the '878 Patent's and MTC's infringement claims. Eidson Dec., Exh. 4. MTC subsequently filed a Statement of Non-Assertion and moved to dismiss the case. The Statement of Non-Assertion provided that MTC no longer asserted the '878 patent against ARP's "Spacer Mesh" products made through "warp knitting." Micromesh is made using separate and

2

distinct layers bonded together, for example, with adhesives or heat lamination. By contrast, the warp knitting technology used by spacer mesh uses a single knitting operation made in one-step by specifically designed looms. Esty Dec., Docket No. 23, ¶¶ 4 & 6. On April 9, 2007 the court held a status conference for the parties to agree to the terms of dismissal. Shortly after, the stipulation was filed and the case was dismissed. Id. ¶ 6; Docket No. 29.

ARP now moves for attorneys' fees and costs incurred in defending against MTC's short-lived infringement claims.

LEGAL STANDARD

In patent actions, a court has discretion to award reasonable attorneys' fees to the prevailing party in exceptional cases. 35 U.S.C. § 285; Eltech Sys. Corp. v. PG Indus., Inc., 903 F.2d 805, 810–11 (Fed. Cir. 1990). A court's decision as to whether to grant attorneys' fees proceeds in two steps. First, the prevailing party must prove by clear and convincing evidence that the case was exceptional. Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1327 (Fed. Cir. 2003). If the court finds the case was exceptional, the court must then determine whether an award of attorneys' fees is appropriate. Id. at 1328. Attorneys' fees are not an ordinary remedy and should be limited to circumstances in which it is necessary to prevent gross injustice. Id. at 1329.

A case is deemed exceptional "when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud, or inequitable conduct in the procurement of the patent, misconduct during the litigation, vexatious or unjustified litigation, conduct that violates [Federal Rule of Civil Procedure] 11, or like infractions." Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005). Absent a Rule 11 violation or any of the material inappropriate conduct articulated in Brooks, attorneys' fees pursuant to section 285 can be imposed against a party only if the party brought the litigation in subjective bad faith and the litigation was objectively baseless. Brooks, 393 F.3d at 1381.

The Federal Circuit applies the law of the relevant regional circuit in determining whether a patentee's conduct violates Rule 11. Intamin Ltd. v. Magnetar Techs., Corp., 483 F.3d 1328, 1337 (Fed. Cir. 2007); Antonious v. Spalding & Evenflo Cos., 275 F.3d 1066, 1072 (Fed. Cir. 2002). In

3

the Ninth Circuit, Rule 11 mandates sanctions against the signer of a legal pleading or motion if the paper is frivolous or filed for an improper purpose. Intamin, 483 F.3d at 1337. To be frivolous, a claim or pleading must have been both "legally or factually baseless from an objective perspective" and brought without a "reasonable and competent inquiry." Id.; Q-Pharma, Inc. v. Andrew Jergens Comp., 360 F.3d 1295, 1299 (Fed. Cir. 2004).

DISCUSSION

I.    Exceptional Case Analysis

In the instant action, because no Rule 11 motions are before the court, the court must find subjective bad faith and objective baselessness to find the litigation exceptional. Rule 11 standards determining whether an infringement investigation was frivolous or unreasonable are probative to the analysis because unjustified, bad faith, and frivolous lawsuits are grounds for finding a case to be exceptional. Superior Fireplace Co. v. Majestic Prods. Co., 270 F.3d 1358, 1377 (Fed. Cir. 2001).

A.    Bad Faith/Reasonable Investigation

A case can be exceptional under 35 U.S.C. section 285 if a patentee bringing an action knows or upon reasonable investigation should know that his claim is baseless. See, e.g. Eltech, 903 F.3d at 810. An inadequate pre-filing preparation is relevant to determining whether a case is exceptional. Epcon Gas. Sys., Inc. v. Bauer Compressors, Inc., 279 F.3d 1022, 1035 (Fed. Cir. 2002). Rule 11 requires an attorney, at a minimum, to "[i]nterpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement." Q-Pharma, 360 F.3d at 1300-01 (citing View Eng'g, Inc. v. Robotic Vision Sys., Inc., 208 F.3d 981, 986 (Fed. Cir. 2000) and Judin v. United States, 100 F.3d 780, 784 (Fed. Cir. 1997)). "[T]he presence of an infringement analysis plays the key role in determining the reasonableness of the pre-filing inquiry made in a patent infringement case under Rule 11." Q-Pharma, 360 F.3d at 1302 (quoting View Eng'g, 208 F.3d at 986).

Outside of the presence of an infringement analysis, the Federal Circuit has relied on other

4

factors in determining whether an action was brought without a reasonable investigation. First, a patent plaintiff must identify the allegedly infringing devices. S. Bravo Sys., Inc. v. Containment Techs. Corp., 96 F.3d 1372, 1375 (Fed. Cir. 1996); see also Eon-Net, L.P. v. Flagstar Bancorp, Inc., 239 F.R.D. 609, 615 (W.D. Wash. 2006). Further, a plaintiff must obtain a sample or copy of the accused device, unless there is an adequate explanation for failing to do so. See Judin, 110 F.3d at 784; Intamin, 483 F.3d at 1338. Finally, there is no requirement a patentee must reverse engineer the allegedly infringing product to avoid a Rule 11 violation. See id.; Q-Pharma, 360 F.3d at 1302.

### 1. Identifying the Infringing Product

ARP argues that Acacia failed to identify the allegedly infringing product. ARP has failed to produce clear and convincing evidence for this claim. Although Acacia's claim charts were confusing, as discussed below, Acacia sufficiently identified the allegedly infringing technology. Before the litigation commenced, Acacia sent voicemails detailing and discussing the alleged infringing product. Further, ARP's counsel sent a letter requesting written confirmation that the mesh on the backpack was at issue, indicating the product was suitably identified. Finally, the notice of patent infringement letter specifically identifies the Micromesh technology as the infringing technology. Id. Accordingly, the infringing product was sufficiently identified.

### 2. Pre-litigation Infringement Analysis

It is clear that, at the very minimum, there is the presence of some infringement analysis. Further, it is clear that defendant obtained samples of the allegedly infringing products. In Q-pharma, 360 F.3d at 1302, the court held an adequate infringement analysis may consist solely of obtaining samples of the allegedly infringing product and making a good faith claim comparison between the product and the allegedly violated patent. The issue, therefore, is whether Acacia performed an adequate infringement analysis after the threshold step of obtaining the necessary product samples.

Acacia claims to have conducted substantial research of the '878 patent, including potentially

5

invalidating prior art. A CD-ROM attached to its notice of infringement contained samples of prior art, electronic copies of the '878 patent and its file history. Acacia never identifies precisely how it engaged in its research or conducted its investigation. For example, Acacia fails to identify any tests it conducted or any process it undertook in investigating the infringement claims. There is no proof Acacia conducted any investigation outside of obtaining a few samples, looking at some prior art and looking at the patent's litigation history. Acacia relies solely on the deposition of its in-house counsel, who conclusorily states that a substantial investigation was conducted. Ybaben Dec. ¶ 3.

In contrast, ARP points to specific and significant deficiencies in Acacia's investigation that any reasonable investigation would have uncovered. Any good-faith pre-litigation investigation should have uncovered the numerous books, website, and prior art that shows that the single-layer spacer mesh does not infringe the '878 patent, which clearly covers only double-layer products. ARP presents a host of publicly available books, Internet websites, and existing patents that show the spacer mesh at issue did not infringe the '878 patent. The literature speaks to Claim 1(b) of the plaintiff's claim construction analysis, which contends "[T]he exemplar jacket [sic] includes a second fabric that is laminated on one side to the micromesh fabric." Eidson Dec., Exh. 7. The literature and patents speak directly to his contention by demonstrating how the accused product does not involve the lamination of a second fabric but is made in one-step as a single knitting operations.

Plaintiff has makes no effort to rebuke or explain its failure to consult the many websites, visual presentations, literary publications, and existing patents describing the distinct process by which spacer mesh products are created. Nor does plaintiff explain how it arrived at the clearly erroneous determination that ARP's products include a second fabric that is laminated to the micromesh fabric.[2] Instead, plaintiff relies on Q-Pharma, arguing that obtaining samples of the product and creating a claim construction chart was sufficient for an adequate investigation. Merely obtaining product samples, however, is insufficient by itself to constitute a reasonable investigation. Rather, plaintiff was required to engage in some degree of competent analysis of those samples before filing suit. Apart from obtaining the product sample and preparing a boilerplate claim chart,

6

plaintiff has provided no evidence that its investigation was reasonable.

Instead, plaintiff extensively chronicles its aggressive litigation tactics, including the nine-month delay between providing ARP with notice of its claim construction and filing the action during which plaintiff attempted to secure a "settlement" to forestall litigation. But none of this speaks to the quality of the investigation at issue. Plaintiff argues its investigation was not frivolous because plaintiff was not privy to the spacer mesh's manufacturing process and thus was unable to realize that the spacer mesh did not infringe the '878 patent, relying on Hoffman-La Roche Inc. v. Invamed Inc., 213 F.3d 1359, 1363-64 (Fed. Cir. 2000). However, the court in Hoffman-La Roche based its holding on the fact that both the court and the defendant could not imagine anything else the plaintiffs could have done to determine the manufacturing process of the accused product. In the instant action, a simple investigation into publicly available resources would have alerted plaintiff to the nature of ARP's manufacturing process.

Finally, Acacia relies on language from Epcon stating that a failure to perform an inadequate investigation does not mandate finding a case to be exceptional. Epcon, 279 F.3d at 1035. While an inadequate investigation does not mandate a finding the case was exceptional, it is a factor in determining bad faith. Additionally, the trial court in Epcon did not abuse its discretion in refusing to impose section 285 sanctions because it had other remedies before it, namely Rule 11 sanctions, and because the patentee in Epcon was eventually able to uncover evidence of infringement. Id. In the instant action, Acacia was unable to uncover *any* evidence of infringement. Finally, factors other than plaintiff's failure to perform an adequate investigation inform the court's determination as to whether this case is exceptional, as set forth more fully below.[3]

### 3. Pre-Litigation Validity Analysis

ARP additionally claims that Acacia failed to engage in a reasonable investigation as to the validity of the '878 Patent prior to filing suit. Patents issued by the PTO are presumed valid. 35 U.S.C. § 282. Patent holders need not submit any evidence as to the validity of their patents before initiating an infringement action. See Avia Group Int'l, Inc. v. L.A. Gear California, Inc., 853 F.2d

7

1557, 1562 (Fed. Cir. 1988). Accordingly, a failure to investigate the validity of a patent prior to filing suit does not render an action frivolous. Q-Pharma, 360 F.3d at 1303. Accordingly, even if Acacia had not submitted its CD of prior art along with its notice of infringement, any shortcomings regarding Acacia's investigation into validity would not support a finding that this case is exceptional.

### 4. Acacia's Claim Chart

ARP argues Acacia's representative claim chart is a frivolous, "one-size-fits-all" generic chart that fails to analyze the alleged product. To support this, ARP points to the infringement notice and representative claim chart Acacia sent to Nike, Inc., accusing its hats, made without spacer mesh, of infringing the '878 patent. The claim chart and notice letter sent to Nike are practically identical to the documents sent to ARP. Compare Eidson Dec., Exh 7 with Davis Dec., Exh. 1. Further, the claim chart analysis ARP received, replete with references to exemplar "jackets," is almost certainly the same claim construction chart Acacia sent to Colombia Sportswear, Inc.

Courts have held that claim charts designed to "fill in the blank for each new case" are "essentially worthless." Eon-net, 239 F.R.D. at 615. In a case such as this, where the plaintiff appears to be in the business of suing makers of a variety of products (shoes, jackets and backpacks, at the very least) for infringing a single patent, the striking similarity of claim charts among separate actions is strong evidence of frivolous, bad faith litigation. Further, ARP argues that these frivolous claim charts, together with Acacia's aggressive demands for a license fee—initially set at $500,000 before threatening to raise the fee to $1,500,000—amounts to extortion. See id. at 619–20 (holding that patentee's litigation practice was analogous to extortion because it sent identical complaints, settlement letter, and claim charts to dozens of parties and tried to extort a nuisance settlement out of alleged infringer).

Acacia argues its claim charts were sufficient because they defined the accused products and provided a claim chart that referenced the material at issue. Thus, Acacia argues, there was the bare presence of an infringement analysis. Again, however, simply placing words on a document does

8

not constitute good-faith litigation practice unless the plaintiff's assertion is supported by a minimally competent investigation and analysis. The generality of plaintiff's claim chart, its use against third parties who do not use spacer mesh, and the overwhelming public literature demonstrating spacer mesh does not violate the '878 patent, along with plaintiff's complete inability to provide any details regarding its investigative process, amounts to clear and convincing evidence that Acacia failed to conduct a good faith comparison between the patent and the accused products.

### 5. Adverse Inference for Discovery Failures

In addition to the evidence discussed above, ARP asserts that the court should assume that plaintiff conducted no reasonable pre-filing investigation because of plaintiff's failure to respond to certain discovery requests. To the extent that the court may draw such an inference, it would likely not meet the clear and convincing evidence standard required for a finding of an exceptional case. However, plaintiff's alleged discovery failures may nonetheless be probative as to the issue of good faith.

Plaintiff objects to this presumption, citing Diego, Inc. v. Audible, Inc., 2006 WL 3486801 (W.D. Wash, Dec. 1, 2006). There, following the opinions of several district courts, the court did not allow additional discovery to obtain the evidence needed to prove a case to be exceptional after the patentee dismissed his infringement suit with prejudice. Id. at *5. The rationale for this decision was the need to prevent re-litigation of cases over their exceptional nature and to limit section 285 to extraordinary cases proved with clear and compelling evidence. Id.

The instant action is distinguishable from Diego. First, the instant action does not require additional discovery. Examples of defendant's discovery failures abound. Second, in Diego the court declined to allow additional discovery partly because the court could find no evidence of any negligence by the patentee, and there existed only unsubstantiated speculation that additional discovery would produce evidence of culpable conduct. Id. In the instant action, there is independent evidence of plaintiff's misconduct. For example, in addition to the shortcomings discussed above, plaintiff responded to an interrogatory request for communications between

1  plaintiff and third parties charged with infringing the '878 patent by claiming it did not have any
2  non-privileged documents responsive to that request. And yet, defendant has subsequently been able
3  to produce non-privileged communications between Acacia and alleged third party infringers
4  responsive to the interrogatory request. Furthermore, the privilege plaintiff claimed was not listed in
5  their privilege log. These tactics lend further support to ARP's allegations of misconduct.

6  Finally, plaintiff cites out-of-circuit district court authority to present a circular and confused
7  argument, essentially claiming that an assertion of privilege cannot imply bad faith unless there is
8  evidence the privilege was asserted in "bad faith to cover for a lack of investigation or lack of an
9  infringement theory." USA Video Tech. Corp. v. Movielink, LLC, 2005 WL 3418407, at *4 (D.
10 Del. 2005). Aside from being circular, this is of no avail because ARP has adduced evidence that the
11 privilege was asserted in bad faith. Plaintiff used discovery privileges to avoid providing discovery
12 information on practically all matters relating to its pre-filing investigation, including products
13 covered by the '878 patent and invalidating prior art. None of these related items were identified on
14 plaintiff's privilege log.

15 Because ARP failed to raise discovery issues before the court prior to the dismissal of the
16 case, the court will not grant a complete inference that plaintiff failed to conduct a reasonable
17 investigation prior to bringing the action. However, in light of plaintiff's inability to describe the
18 process by which it undertook its investigation and the paucity of its representative claim analysis,
19 the court considers these discovery failures as evidence of an unreasonable pre-litigation
20 investigation. To hold otherwise would provide an incentive for parties in similar actions to adopt
21 dilatory discovery tactics to avoid having to pay attorneys' fees. See National Ass'n of Radiation
22 Survivors v. Turnage, 115 F.R.D. 543, 557 (N.D. Cal. 1987) (Patel, J.).

23 In sum, plaintiff's lack of any cognizable pre-litigation infringement investigation into the
24 accused products, the dilatory and evasive discovery tactics, and "essentially worthless" claim chart
25 serve as clear and convincing evidence of subjective bad faith.

10

B.  Objective Baselessness

Although both Rule 11 and section 285 impose an additional requirement that the complaint be "objectively baseless" in order to justify an award of sanctions or attorneys' fees, the objective merits of plaintiff's claim have been discussed at length in discussing its failure to perform a reasonable inquiry into whether ARP's products were infringing. Plaintiff offers no defense of its apparently frivolous claim, instead arguing that the court should resist reaching the merits of this action in light of the fact that the case has been voluntarily dismissed. Adopting such a rigid prohibition against considering the merits of an assertedly baseless claim would amount to a windfall for plaintiffs, such as the plaintiff here, who file ill-advised and poorly researched actions hoping to extract nuisance settlements before the myriad defects in their allegations can be fully explored. The court will not sanction such an approach. Accordingly, the court finds that the instant action, in addition to being brought in bad faith and without a reasonable pre-litigation inquiry, was objectively baseless.

C.  Discretionary Analysis

Once a case is deemed exceptional pursuant to section 285, the decision to award costs and attorneys' fees is within the court's discretion. See, e.g., Superior, 270 F.3d at 1378. In making this determination, the court can weigh "intangible as well as tangible factors: the degree of culpability of the infringer, the closeness of the question, litigation behavior, and any other factors whereby fee shifting may serve as an instrument of justice." Id.

Weighing these factors, imposing attorneys' fees and costs is reasonable. Acacia's reckless pre-filing "investigation" and aggressive demands for ever-increasing license fees exhibit improper litigation behavior, bad faith, and culpability. See Eon-net, 239 F.R.D. at 616–19. Acacia's discovery abuses provide further evidence of bad faith and improper litigation behavior. Acacia's derelict and egregious practice unfairly transferred the costs of its pre-filing burden to ARP, and attorneys' fees and costs are thus necessary to correct this imbalance. See id. at 614 (noting alleged infringers have no choice but to incur costs in defending themselves against the most baseless

11

claims); View, 208 F.3d at 986 (noting that undue and unfair costs are imposed against an innocent party when it must defend itself from baseless claims of infringement).

Acacia' analysis of the factors explicated in Superior is unpersuasive. It cites an out-of-circuit, unpublished decision from 1986 to support the contention that closeness is only a factor when there is no "true winner." The court fails to see how this is helpful or persuasive. The losing party would optimally try and argue the case was close, since closeness is a factor hedging against instituting attorneys' fees. Acacia further argues that the merits of the claim were imbued with ambiguity. As discussed above, ARP has shown that plaintiff's claim was objectively baseless. Finally, Acacia argues its tactics were not egregious because it waited nine months before filing the action and ARP could have avoided costs by disclosing its manufacturing process. Acacia's discovery abuses and "shake-down" approach to licensing negotiations are sufficient to support a finding of egregious litigation tactics. Further, Acacia's argument amounts to nothing more than a complaint that ARP should have filled the gaps of Acacia's frivolous infringement investigation. Public literature, visual demonstrations, and existing materials make clear that Acacia should have been aware that the spacer mesh did not infringe the '878 patent.

### D. Procedural Arguments

In addition to attacking the substance of ARP's section 185 claim, Acacia alleges that ARP's motion is procedurally improper. First, Acacia alleges ARP is improperly seeking Rule 11 sanctions because ARP failed to file a separate Rule 11 motion and failed to provide Acacia with the required 21-day safe harbor to review and respond to the motion. This argument is without merit. While ARP's motion states it is seeking attorneys' fees pursuant to Rule 11 (alongside 35 U.S.C. section 285), the substance of its motion makes clear that it is seeking attorneys' fees pursuant to 35 U.S.C. section 28, using Rule 11 standards as the factual predicate for a finding that the case is exceptional. ARP is not seeking Rule 11 sanctions per se.

Second, Acacia alleges ARP failed to provide a required bill of costs and appropriate documentation to support each item of cost claimed alongside its motion for costs and attorneys'

fees. See 28 U.S.C. § 1924; Civ. L.R. 54-1(a). ARP initially failed to provide such documentation, though subsequently provided additional evidentiary support. Because Acacia has been permitted to file a supplemental opposition brief addressing this evidence, this procedural failing does not warrant a denial of ARP's motion.

Acacia next argues ARP's motion is procedurally improper because ARP failed to include a statement that their counsel attempted to meet and confer to resolve disputes with respect to the motion. Local Rule 54-6(b)(1). ARP's motion states that counsel "conferred several times, via e-mail and telephone, regarding the relief requested, but were unable to reach an agreement." Def.'s Mot. at iv. Acacia further argues that ARP violated Local Rule 54-6(b)(2) by failing to provide a statement of services actually rendered and the time spent on such service. Again, ARP has submitted additional evidence and the court will consider these documents in assessing the reasonableness of ARP's request.

Finally, Acacia argues ARP failed to file a proposed order with its motion. Local Rule 7-2(c) ("Unless excused by the Judge who will hear the motion, each motion must be accompanied by a proposed order."). ARP has corrected this minor defect by submitting a proposed order with its reply brief. Accordingly, this omission does not justify dismissing the motion on procedural grounds.

## II. Amount of Attorneys' Fees

Acacia argues that the lodestar method should be used for any federal fee-shifting statute, and that ARP's failure to comply with the lodestar requirements renders its motion invalid. The lodestar method is a method whereby the court multiplies reasonable hours with a reasonable rate. City of Burlington v. Dague, 505 U.S. 557, 559 (1992). ARP failed to provide any documentation in support of its fee request with its opening brief, and included billing records only with its reply brief. Acacia has filed a supplemental opposition to ARP's motion directed toward the reasonableness of ARP's request.

ARP seeks five classes of fees and costs: (1) $11,528.00 in fees and $1,122.56 in costs incurred prior to September 28, 2006 related to prior art searches and invalidity investigations; (2)

13

1  $9,401.00 in fees and $316.00 in costs incurred prior to September 28, 2006 related to Acacia's
2  charges of infringement; (3) $115,854.50 in fees and $8,655.77 in costs directly related to this
3  litigation; (4) $11,515.00 in fees and $3,508.67 in costs directly related to ARP's participation in the
4  "Common Interest Group" ("CIG"); and (5) $6,609.00 in fees related to this litigation and the CIG.
5  The totals provided by ARP are $154,907.50 in fees and $13,603.00 in costs, for a total request of
6  $168,510.50.  Acacia raises a number of specific objections to ARP's request which the court will
7  consider in turn.

8  First, Acacia cites some arithmetical errors and a failure to apply a credit reflected in the
9  supporting invoices, which bring the total possible award reflected in the invoices to $167,159.20 in
10 expenses and costs.  Acacia additionally argues that a section 285 award is limited to attorneys' fees,
11 not costs, and therefore the court should disregard ARP's request for costs.  The sole case that Acacia
12 relies upon for this point, Amsted Indus. Inc. v. Buckeye Steel Castings Co., 23 F.3d 374, 377 (Fed.
13 Cir. 1994), held only that a section 285 award could not include expert fees.  Several cases have
14 allowed costs to be included in a section 285 award.  See, e.g., Goodwall Constr. Co. v. Beers Constr.
15 Co., 991 F.2d 751, 759 (Fed. Cir. 1993) ("This court detects no abuse of discretion in the district
16 court's award of attorney fees and costs"); Central Soya Co. v. Geo. A. Hormel & Co., 723 F.2d
17 1573, 1578 (Fed. Cir. 1983) (holding that an "award of expenses was properly within the scope of §
18 285").  Accordingly, valid costs are properly included in ARP's section 285 request.

19 Acacia also objects to the inclusion of fees and costs incurred prior to the commencement of
20 this lawsuit on September 28, 2006.  Section 285 states simply that "[t]he court in exceptional cases
21 may award reasonable attorney fees to the prevailing party," and is therefore unclear as to whether
22 pre-filing fees and costs are recoverable.  In a case such as this, where the misconduct warranting the
23 award may look to a Rule 11 violation, the proper focus is on the commencement of the action and
24 whether it was filed without first performing an adequate infringement analysis.  It is the post-filing
25 activity compelled by the deficient filing that justifies an award of fees and costs in this case.

26 Acacia further argues that ARP may not recover fees and costs related to the instant motion.
27 Earlier cases have held that a section 285 award must exclude fees incurred in petitioning for the
28

14

award itself. See, e.g., Chromalloy Am. Corp. v. Alloy Surfaces Co., 353 F. Supp. 429, 432 (D. Del. 1973). More recent cases, however, have held that an award that includes "attorney fees for time spent on the issue of attorney fees [is] allowable." Scott Paper Co. v. Moore Bus. Forms, Inc., 604 F. Supp. 835, 838 (D. Del. 1984). Accordingly, this court finds that ARP is entitled to the fees and costs incurred in prosecuting the instant motion.

Acacia also objects to the inclusion of fees related to an unfiled motion for summary judgment and an opposition to a motion to an unfiled motion to dismiss. Acacia cites no authority for this point. Courts have allowed recovery of costs related to claims and defenses that ultimately proved unnecessary. See, e.g., Chromalloy, 353 F. Supp. at 433. ARP should not be made to suffer for its diligence in defending against Acacia's baseless lawsuit. Accordingly, ARP is entitled to those fees.

Additional problems arise in connection with fees and costs related to work with the CIG, which clearly includes work not attributable to the instant litigation. ARP apparently joined a group of other defendants in order to pool resources in defense against Acacia's patents. Acacia argues that these entries must be excluded because ARP was the sole defendant in the instant action. However, a certain amount of this work would have been necessary regardless of whether the work was done in conjunction with the CIG. Accordingly, the court finds that a reasonable allocation of CIG and joint defense work is 20%. The court will therefore reduce the amount reflected in those entries to 20% in determining the final award.

Finally, Acacia raises a number of objections regarding ARP's trips to Portland, Oregon to review prior art at Nike. These appear to be justifiable group defense activities and will be reduced accordingly.[4]

As for the reasonableness of billing rates, Acacia claims that ARP has failed to provide any evidence that its rates were reasonable. Acacia raises no specific arguments as to the unreasonableness of the fees, however. After reviewing the billing records, the court finds that the billing rates are reasonable.

Based on the foregoing adjustments, ARP is entitled to a section 285 award in the amount of $127,932.94.

15

CONCLUSION

For the foregoing reasons, the court GRANTS defendant's motion for attorneys' fees. Plaintiff shall transmit to defendant the full amount of the fees ordered herein within sixty (60) days of the date of this order.

IT IS SO ORDERED.

Date: August 29, 2007

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

16

**ENDNOTES**

1. In light of the closeness in relationship between Acacia and MTC, and the fact that the pre-litigation activities were conducted by Acacia, the term "plaintiff" as used in this order refers both to MTC and Acacia.

2. Because plaintiff's initial brief was so deficient in this regard, the court allowed plaintiff to submit additional declarations after oral argument setting forth the details of plaintiff's infringement analysis. The court specifically requested that plaintiff provide declarations from its in-house experts and other technical personnel who allegedly conducted the infringement analysis. Rather than comply with this request, plaintiff has submitted declarations from attorneys and Acacia's Vice President of Business Development. These declarations provide no specific information as to infringement analysis, focusing instead on validity analysis and the general practices of Acacia. Accordingly, plaintiff has still failed to provide evidence of an acceptable pre-litigation infringement analysis.

3. As an additional argument regarding the inadequacy of plaintiff's pre-litigation investigation, ARP faults plaintiff for not reverse-engineering ARP's products. In light of the factual nature of the section 285 analysis, reverse-engineering is not strictly required in all case to demonstrate a reasonable investigation. See Intamin, 483 F.3d at 1338 (holding reverse engineering is not a blanket requirement of a reasonable pre-filing investigation). Under these circumstances, plaintiff's failure to reverse-engineer the product does not by itself constitute a failure to engage in an adequate investigation.

4. Acacia additionally identifies dozens of individual entries which it claims are vaguely described or inappropriate. Acacia acknowledges, however, that the exhibits submitted by ARB "generally demonstrate that the fees may have been reasonably incurred." To the extent that the descriptions reflected in the billing records are less than ideal, the court does not find that these defects are significant enough to warrant a reduction in the amount of recovery beyond the reductions already discussed.

17